UNITED STATES of America, Plaintiff,

v.

NORTHERNAIRE PLATING COMPA-
NY, Willard S. Garwood and R.W.
Meyer, Incorporated, Defendants.

and

R.W. MEYER, INCORPORATED,
Defendant and Cross-Plaintiff,

v.

NORTHERNAIRE PLATING COMPANY
and Willard S. Garwood,
Cross-Defendants.

and

NORTHERNAIRE PLATING COMPANY
and Willard S. Garwood, Defendants
and Third-Party Plaintiffs,

v.

CITY OF CADILLAC,
Third-Party Defendant.

No. G84–1113 CA7.

United States District Court,
W.D. Michigan, S.D.

April 30, 1987.

Robert H. Oakley, Asst. Atty. Gen., Land and Natural Resources Div., U.S. Dept. of Justice, Washington, D.C., John A. Smietanka, U.S. Atty. (Joel M. Gross, Land and Natural Resources Div., Environmental Section, U.S. Dept. of Justice, Washington, D.C., of counsel), Babette J. Neuberger, Asst. Regional Counsel, U.S. E.P.A., Chicago, Ill., for the United States.

Smith Haughey, Rice & Roegge by L. Roland Roegge, John M. Kruis, Grand Rapids, Mich., for defendant R.W. Meyer, Inc.

Cholette, Perkins & Buchanan by Michael P. McCasey, Albert J. Engel, III, Grand Rapids, Mich., Susan E. Morrison, Siudara Rentrop Martin & Morrison, Bloomfield Hills, Mich., for Northernaire Plating and Willard S. Garwood.

Owen J. Cummings, Cummings McClorey David & Acho, P.C., Livonia, Mich., for third party defendants R.W. Meyer Inc. and City of Cadillac.

Robert P. Tremp, Traverse City, Mich., of counsel, for City of Cadillac.

## OPINION ON MOTIONS

HILLMAN, Chief Judge.

Presently before this court are several matters upon which oral arguments were heard on Tuesday, March 24, 1987. The underlying action is a suit filed by the United States against Northernaire Plating Company ("Northernaire"), Willard S. Garwood ("Garwood") and R.W. Meyer, Inc. ("Meyer") which seeks to recover costs expended by the government in undertaking an "Immediate Removal Action." The action was taken to remove hazardous substances from a site where Northernaire had operated an electroplating business for a period of about ten years. This lawsuit has been brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act (hereinafter, "CERCLA"), 42 U.S.C. § 9601, *et seq.*

## CITY OF CADILLAC'S MOTION FOR A CONTINUANCE

By this motion third-party defendant City of Cadillac, asks for a continuance of 120 days so that they may conduct discovery and/or procure opposing affidavits. This motion was filed on July 29, 1986. As more than 120 days have passed this motion is denied as moot.

## AFFIDAVIT OF ROBERT BOWDEN

In support of its Motion for Partial Summary judgment (discussed below), the United States has submitted the affidavit of Robert Bowden. Bowden is presently employed as the acting chief of the Emergency Response Section in Chicago of the United States Environmental Protection Agency. At the time of the Immediate Removal Action taken at the Northernaire facility he was chief of the Spill Response Section of the Environmental Protection Agency, Region V. His responsibilities included supervising the Immediate Removal Action. Defendant Cadillac asks that the court strike the affidavit because it contains evidence that would be inadmissible at trial. Cadillac argues that much of the testimony offered by Bowden in his affidavit is hearsay as he relies on the reports of various EPA and Michigan Department of Natural Resource ("MDNR") personnel, and as such, most of his testimony is not within his personal knowledge. These arguments are without merit.

Federal Rule of Evidence 803(8) provides that certain public records and reports are not excludable under the hearsay rule unless "the source of information or other circumstances indicate lack of trustworthiness." The reports of the EPA and the MDNR clearly fall within the purview of this section. Furthermore, it is well established that the burden of showing the report's untrustworthiness is on the party opposing admission. *See Baker v. Elcona Homes Corp.,* 588 F.2d 551 (6th Cir.1978),

*cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979). Cadillac has failed to show the untrustworthiness of the reports. Therefore these reports would be admissible at trial. As such it is proper for Bowden to include evidence adduced from them in his affidavit. *See Dyer v. MacDougall,* 201 F.2d 265 (2d Cir.1952). *See also, Pacific Service Stations Co. v. Mobil Oil Corp.,* 689 F.2d 1055 (T.E.C.A.1982). The City of Cadillac's Motion to Strike the Affidavit of Robert Bowden is denied.

### GOVERNMENT'S MOTION FOR PARTIAL SUMMARY JUDGMENT FACTS

Northernaire owned and operated a metal electroplating business in Cadillac, Michigan. It began operations in Cadillac in 1972 under a ten-year lease on property owned by Meyer. These operations continued until mid–1981 when Northernaire's assets were sold to Toplocker Enterprises, Incorporated ("Toplocker"). From July of 1975 until the sale of the assets to Toplocker, Garwood was the president and sole shareholder of Northernaire. He personally oversaw and managed the day-to-day operations of the company. Defendants Northernaire Plating Company and Willard S. Garwood's Answer to Requests for Admissions, 4–7 (hereinafter, "Northernaire Admissions").

The site used by Northernaire is located one-half mile northwest of the center of the City of Cadillac, and one-fourth mile southwest of the city's well field. The area includes residences as well as commercial and industrial facilities. The topography of the area is dominated by sandy soils. Such soils offer little resistance to the flow of leaching chemicals in the groundwater. Affidavit of Robert Bowden, par. 5 (hereinafter, "Bowden, par. ——").

In the course of its business, Northernaire used and stored caustic plating baths containing cyanide and heavy metals such as zinc, hexavalent chromium, and cadium. Northernaire also used and stored chromic acid, a highly corrosive material which is reactive with caustic substances. Northernaire Admissions, 8–9. In May of 1981, the Michigan Department of Natural Resources (hereinafter, "MDNR") attempted to inspect the Northernaire site. They found the building locked and deserted. The MDNR informed the Environmental Protection Agency (hereinafter "EPA") that it found drums of plating waste outside of the building. It also reported that a child had received chemical burns as a result of playing around the drums.

On July 19, 1982, the MDNR took soil, sludge, drum and tank samples from various locations on the Northernaire site. The soil samples showed the presence of significant amounts of hazardous substances customarily used in electroplating such as cyanide, lead, cadium, nickel, chromium, copper, and zinc. Additionally, the MDNR reported observing a cloud of gas vapors. The building was again found locked and deserted. The MDNR again provided the EPA with a copy of its findings.

At the direction of Robert Bowden, who was, at that time, chief of the Spill Response Section of the EPA, Section V, the EPA and the MDNR inspected the Northernaire site on March 16–17, 1983. Their findings are set forth in a report prepared by Weston Sper (hereinafter, the "Sper Report") of the EPA, Region V, Technical Assistance Team. The inside of the building was in disarray, with drums and tanks of chemicals scattered about. Substantial amounts of cyanide and acid were among the substances discovered in the drums and tanks. The inspectors also located a sewer line on the north side of the building. They opened a catch basin found twenty feet north of the building and observed two pipes and discolored soil, indicating contamination. The sewer line was not sealed and the bottom of the catch basin opened to the ground. The EPA concluded that waste had been discharged into the catch basin where it seeped into the ground. As the ground became saturated, the material entered the second pipe which drained northeast into a sanitary sewer line. The sanitary sewer line discharged into the City of Cadillac Sewage Treatment Plant.

On June 28–29, 1983, the EPA informed the defendants that it intended to begin an "Immediate Removal Action" at the Northernaire site unless the defendants undertook a cleanup themselves. The defendants declined to do so.

From July 5 until August 3, 1983, the EPA conducted an Immediate Removal Action at the Northernaire site. Its activities included neutralization of caustic acids, bulking and shipment of liquid acids, neutralization of caustic and acid sludges, excavation and removal of the contaminated sewer line, and decontamination of the inside of the building. Included among the substances found at the Northernaire site were 5400 gallons of waste cyanide, 140 barrels of waste cyanide mix, 3450 gallons of acid and 5000 gallons of waste hypochlorite solution.

In its complaint, the United States alleges that it expended approximately $173,000 in connection with the Immediate Removal Action. On August 13, 1984, the United States made a demand for reimbursement from each of the defendants for the cost of the Immediate Removal Action. As each of the defendants failed to make the requested reimbursement, the United States filed a complaint against the defendants on September 25, 1984. Each of the defendants subsequently answered claiming no knowledge with respect to most of the allegations of the United States. In addition, Meyer filed a cross-complaint against Northernaire and Garwood filed a third-party complaint against the City of Cadillac.

## THE STATUTORY SCHEME

The Comprehensive Environmental Response, Compensation and Liability Act (hereinafter, "CERCLA"), 42 U.S.C. § 9601, et seq., was enacted in December, 1980 "[t]o provide for liability, compensation, cleanup, and emergency response for hazardous substances released into the environment and the cleanup of the inactive hazardous waste disposal sites." Pub.L. No. 96–510, purpose clause, 94 Stat. 2767 (1980). Congress, in response to a "strong public demand for action in light of Love Canal and other celebrated dump sites," enacted CERCLA:

[T]o initiate and establish a comprehensive response and financing mechanism to abate and control the vast problems associated with the abandoned and inactive hazardous waste disposal sites.

H.R.Rep. No. 1016, 96th Cong., 2d Sess., Pt. I at 22, U.S.Code Cong. & Admin.News 1980, pp. 6119, 6124.

To eliminate the adverse health and environmental effects arising from thousands of dump sites, Congress authorized the President of the United States to act directly to abate any actual or threatened release of any hazardous substance. 42 U.S.C. § 9604(a). The President has delegated this authority to the Administrator of the EPA. Exec. Order 12316, § 2(e), 46 Fed. Reg. 42,237, reprinted in, 42 U.S.C.A. § 9615 at 544–48 (Aug. 14, 1981).

Among the activities authorized by Section 9604(a) are "removal" and "remedial" actions.

## DISCUSSION

42 U.S.C. § 9607(a) provides, in part, that "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section—(1) the owner and operator of ... a facility ... shall be liable for—

(A) all costs of removal or remedial action incurred by the United States Government or a State not inconsistent with the national contingency plan;

(B) any other necessary costs of response incurred by any other person consistent with the national contingency plan; and

(C) damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release."

42 U.S.C. § 9607(a). By its Motion for Summary Judgment, the United States seeks to have an order entered granting it a partial summary judgment finding defendants Northernaire, Garwood and Meyer jointly and severally liable, under the

provisions of Section 9607(a), for the costs which the United States incurred in its cleanup of hazardous substances and contaminated soil found at the Northernaire facility.

On a motion for summary judgment, movant bears the burden of showing conclusively that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60 (6th Cir.); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir.1974). Fed.R. Civ.P. 56(a). In determining whether issues of fact exist, "the inferences to be drawn from the underlying facts contained in [the affidavits, attached exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A court may not resolve disputed questions of fact in a summary judgment decision, and if a disputed question of fact remains, the district court should deny the motion, and proceed to trial. *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976).

"[W]here the movant brings forward and supports his motion for summary judgment, his opponent may not rest merely upon his pleadings, but rather must come forward to show genuine issues of fact. Mere conclusory and unsupported allegations, rooted in speculation do not meet that burden." *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1274 (6th Cir. 1974).

In order to establish a *prima facie* case of liability the government must prove four things:

(1) that the Northernaire site is a "facility" as that term is defined in 42 U.S.C. § 9601(9);

(2) that a "release" or "threatened release" of a "hazardous substance" from the Northernaire site has occurred;

(3) that the release or threatened release has caused the United States to incur "response costs;" and

(4) that each of the defendants is a "person" as that term is defined in 42 U.S.C. § 9607(a)(1)–(3).

CERCLA defines a facility as:

any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located.

42 U.S.C. § 9601(9).

In turn, the term "hazardous substance" is defined in 42 U.S.C. § 9601(14) as being any substance designated under any one or more of the statutes listed therein, or having the characteristics identified under Section 3001 of the Solid Waste Disposal Act (Hereinafter, the ("RCRA"), 42 U.S.C. § 6921, except for those substances which are listed in Section 9601(14) as being specifically excluded). The substances found at the Northernaire site by the EPA and the MDNR included 5400 gallons of waste cyanide and 140 barrels of waste cyanide mix. These are listed as hazardous wastes F007 and F008 under regulations issued pursuant to the RCRA, at 40 C.F.R. § 261.31, and are not specifically excluded by Section 9601(14). Given the presence of these substances at the Northernaire site, there is no question that it is a "facility" within the meaning of CERCLA.

The second element which the plaintiff must prove is that there was a release or a threat of release of a hazardous substance at the Northernaire site. *United States v. Wade*, 577 F.Supp. 1326, 1334 (E.D.Pa. 1983). CERCLA defines a release as "[a]ny spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment" of a hazardous substance. 42 U.S.C. § 9601(22). The evidence presently before this court demonstrates that a release did in fact occur.

The reports prepared by MDNR and EPA investigators, some of which are in evidence and some of which are discussed in the affidavit or Robert Bowden, show that cyanide, lead, cadium and other hazardous substances were found in the soil at

the Northernaire site. Defendants have failed to set forth any evidence which could lead to the conclusion that the contamination was caused by something other than the activities of the Northernaire facility. As such, the government has met its burden of proof with respect to the existence of a release.

The government also argues that the abandonment of large quantities of hazardous wastes and chemicals at the Northernaire site created a threatened release. Defendants argue that there was no abandonment of the facility. They also argue, based on the Sper Report that there was no threat of release. The evidence in the record, however, leads to a different conclusion.

While the Sper report, which was prepared in April of 1983, found that the site did not pose an immediate danger, it did conclude that the site needed to be cleaned up within six months. The EPA acted four months after the report was issued. Furthermore, the Sper Report, and reports by both the MDNR and the EPA described the facility as locked and in extreme disarray. Defendants argue that in fact the site was not abandoned. They argue that after Northernaire ceased operations in the spring of 1981, Toplocker Enterprises, Inc., using the first Bank of Cadillac (now Old Kent Bank of Cadillac) as its agent, assumed obligation for paying rent to Meyer. Toplocker paid rent until early 1982. The defendants do not offer any evidence about who controlled the property from early 1982 until July of 1983 when the EPA began its inspection and cleanup. Furthermore, Toplocker and defendants Meyer, Garwood and Northernaire all refused to remove the hazardous waste when such action was requested by the EPA.

When viewed in light of the statutory purpose of CERCLA, which is to prevent the potentially devastating effects of introducing hazardous substances into the environment, the evidence in the record clearly supports a finding that there was a threat of release at the Northernaire site in July of 1983. The evidence shows that there were hazardous substances at the Norther-

naire site and that these substances, individually and collectively, would pose a threat to the population of the Cadillac, Michigan area if they were to be released into the environment. The evidence further demonstrates that none of the defendants were willing to take responsibility for ensuring that no such release would occur. The evidence of the presence of hazardous substances at the facility, when combined with the evidence of the unwillingness of any party to assert control over the substances, amounts to a threat of a release.

Next, plaintiff must prove that the release or threatened release caused the government to incur "response costs." The affidavit of Bowden clearly supports a finding that the government has incurred such costs, and the defendants have presented no information which rebuts this portion of the affidavit. They do, however, argue that the government has not shown that the costs which it has expended are recoverable from the defendants. This issue is not relevant in the instant motion as the government seeks summary judgment only as to the fact of the defendants' liability, and not as to the amount of defendants' liability.

Finally, plaintiff must show that defendants are "covered persons" within the meaning of CERCLA. 42 U.S.C. § 9607(a)(1)–(2) includes in its definition of "covered person" who are liable for response costs, the owner, in this case Meyer, and operator, in this case Northernaire, of the facility. In addition, a corporate officer who has responsibility for arranging for the disposal of hazardous waste is personally liable under the provisions of CERCLA. *United States v. NEPACCO,* 579 F.Supp. 823, 847–848 (W.D.Mo.1984). *See also, State of New York v. Shore Realty Corp.,* 759 F.2d 1032, 1052 (2d Cir.1985). Garwood has admitted that he was responsible for the disposal of chemicals or chemical wastes for Northernaire. Northernaire Admission No. 10.

Section 9607(b)(3) provides a defense to the strict liability provisions of Section 9607(a). However, this defense is not available to any of the defendants. In or-

748

der to secure protection under Section 9607(b)(3), a defendant must prove three things: (1) that a third party was the sole cause of the release or threatened release of a hazardous substance; (2) that the act or omission of the third party causing the release did not occur in the context of a contractual relationship existing directly or indirectly with the defendant; and (3) that the defendant took due care and precautions to prevent the foreseeable acts or omissions of the third party causing the release or threatened release. None of the defendants can satisfy the second of these requirements.

■ Northernaire leased the facility from Meyer. This contractual relationship precludes either of these defendants from invoking the protections of Section 9607(b)(3) by arguing that the other defendant is the third party which was the cause of the release. *United States v. Argent Corp.*, 21 Env't Rep. Cases (BNA) 1354, 1356 (D.N.M.1984); *United States v. SCRDI*, 20 Env't Rep. Cases (BNA) 1753 (D.S.C.1984). *See also, Shore Realty Corp.*, 759 F.2d at 1044. Meyer also argues that "the facts as they ultimately develop may show that Garwood was solely responsible for the alleged 'release' or that Garwood and the City of Cadillac together were responsible, and that Northernaire in and of itself had no responsibility." Meyer's Supplemental Memorandum at 4. Meyer fails to provide any support for this hypothesis. Garwood was the president of Northernaire. The hazardous substances found at the site are all associated with electroplating, the business which Northernaire was engaged in. It is inconceivable that Garwood, acting outside of his role as president and an agent of Northernaire, caused the release of hazardous substances at the site or created the threatened release which prompted the EPA to engage in an "Immediate Removal Action." Meyer cannot create an issue of fact by relying on "conclusory and unsupported allegations, rooted in speculation...." *Bryant v. Commonwealth of Kentucky*, 490 F.2d 1273, 1274 (6th Cir.1974).

■ The government has sought the imposition of joint and several liability in this matter. While Section 9607 permits the imposition of joint and several liability, it does not require it. *United States v. A & F Materials Co.*, 578 F.Supp. 1249 (S.D.Ill. 1984). Whether or not joint and several liability is to be imposed turns on whether or not the harm is divisible. *United States v. Chem-Dyne Corp.*, 572 F.Supp. 802, 811 (S.D.Ohio 1983). "If the harm is divisible and if there is a reasonable basis for apportionment of damages, each defendant is liable only for the portion of harm he himself caused." *Id.* However, if the harm is indivisible then each defendant who is found liable is subject to liability for the entire harm.

I find that the harm in this matter is indivisible. While the basis for each of the defendant's liability is different, Meyer is liable because it is the landowner, Northernaire is liable because it is the operator, and Garwood is liable because of his role in directing the handling of hazardous substances at Northernaire, the source of the harm is the same. The source of the harm was the presence of the hazardous substances at the Northernaire facility. The presence of the substances at the Northernaire site is directly attributable to the activities of Garwood and Northernaire. Therefore, it could be argued that they alone are responsible for causing the entire harm. This is, however, contrary to the plain language of the statute which makes a landowner strictly liable absent his ability to assert a defense under Section 9607(b)(3). Congress clearly intended that the landowner be considered to have "caused" part of the harm. As such the harm is indivisible, and all of the defendants are jointly and severally liable. *See, U.S. v. South Carolina Recycling and Disposal, Inc.*, 20 Env't Rep. Cases (BNA) 1754, 1759 (S.C.D.C.1984) (holding landowners and generators jointly and severally liable under CERCLA).

I note, however, that under CERCLA, actions for contribution are permitted among parties who have been held jointly and severally liable. 42 U.S.C. § 9607(e)(2). As the court in *South Carolina Recycling*

*and Disposal, Inc.,* noted "questions of determining 'equitable shares of the liability' with respect to an indivisible injury are appropriately resolved in as action for contribution after plaintiff has been made whole." *Id.,* 20 Env't Rep. Cases (BNA) at 1760 n. 8.

### NORTHERNAIRE AND GARWOOD'S REQUEST FOR AFFIRMATIVE RELIEF

In their reply to the plaintiff's summary judgment motion defendants/third-party plaintiffs ask that the court, if it should fail to deny plaintiff's motion, hold the City of Cadillac liable for contribution and/or indemnification for all costs which Northernaire and Garwood may be held liable for. Cadillac argues that the request should be struck as it was not properly presented as a Rule 56 motion under the Federal Rules of Civil Procedure.

██ Even if the request is proper as a Rule 56 motion, it would have to be denied because material questions of fact still exist with respect to the liability of the City. Northernaire and Garwood's third-party complaint seeks contribution from the City for alleged tortious acts or omissions that caused the release of hazardous substances. However, while the record contains numerous allegations that the City failed to properly carry out its duties with respect to the design, construction and operation of a sewer line which Northernaire used to dispose of waste from its facility, the record does not conclusively support a finding that this was in fact the case.

In summary, I hold that the City of Cadillac's motions for a continuance and to strike the affidavit of Robert Bowden are denied; the United States' motion for partial summary judgment finding Garwood, Northernaire and Meyer, jointly and severally liable for the costs incurred during the cleanup of the Northernaire site, insofar as those costs are not inconsistent with the national contingency plan, is granted; and, Northernaire and Garwood's request for affirmative relief against the City of Cad-

illac is denied. Judgment shall be entered accordingly.